IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

RONDULA I. LANE,

                Petitioner,

      vs.

HAROLD D. GRAHAM, Superintendent,
Auburn Correctional Facility,

                Respondent.

No. 9:14-cv-01261-JKS

MEMORANDUM DECISION

Rondula I. Lane, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Lane is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Auburn Correctional Facility.  Respondent has answered the Petition, and Lane has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On March 9, 2010, Lane was charged with second-degree burglary, 4 counts of first-degree criminal sexual act, and first-degree sexual abuse in an indictment that alleged that Lane broke into the home of a physically disabled woman, stole her possessions, and sexually assaulted her.  Prior to trial, the county court held a *Huntley*[1] hearing to determine the admissibility of Lane's statements to law enforcement.  At the conclusion of the hearing, the county court issued the following findings of facts:

>On January 1, 2010, Ptl. Ciccone reported to headquarters to work the 8:00 a.m. to 4:00 p.m. shift.  At roll call, he was made aware of a burglary and sexual assault that

---

[1]  *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).  The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

had allegedly occurred during the early morning hours of January 1, 2010.  Patrolmen were instructed to be on the look out for a thin, black male with facial hair, wearing a grey sweatshirt.

At approximately 1:30 p.m., Ptl. Ciccone was dispatched to 110 Third Street to respond to a domestic incident.  While en route to that location, Ptl. Ciccone saw a male near the Rome Rescue Mission who matched the description of the suspect in the burglary/sexual assault investigation.  Upon arrival at 110 Third Street, the patrolman was given the description of the person involved in the domestic dispute who had by then left the scene.  Ptl. Ciccone then began an area check for that suspect.

While traveling by the Rome Rescue Mission a second time, Ptl. Ciccone saw the same person he had seen earlier who matched the description of the burglary suspect.  He stopped, approached the individual and asked for identification.  The individual produced his benefit card which identified him as Rondula Lane, the defendant.  Ptl. Ciccone then made the general observation that he matched the description of someone they were looking for.  [Lane] spontaneously began to remove items from his pockets and gave them to his girlfriend.  When asked why he was doing that, he responded that he was going to jail.

Ptl. Ciccone observed one of the items to be a roll of quarters wrapped in cellophane.  [Lane] said that he had obtained the quarters at Dollar General.  Ptl. Ciccone then contacted headquarters and spoke to Chief Beach to determine if any items were taken during the burglary.  While the Chief was determining if anything else was taken from the victim's apartment, Ptl. Ciccone remained near [Lane].

Det. Race was called into work at approximately 12: 30 p.m. that day to assist in the burglary/sexual assault investigation.  He spoke with Chief Beach who provided him with information regarding the incident as well as a description of the suspect and later informed him that property was taken from the victim's apartment, including a roll of quarters in shrink wrap as well as loose change.

Det. Race was directed to the Rome Rescue Mission where he met with Ptl. Ciccone.  Upon arrival, Det. Race observed [Lane] and recognized him from prior occasions.  He spoke to the patrolman and was told that he was passing off property to his girlfriend, including a roll of quarters and loose change.

Det. Race proceeded into the Rescue Mission and spoke with [Lane's] girlfriend and she turned over the quarters she had received from [Lane].  He then returned to speak with [Lane].  [Lane] agreed to accompany Det. Race to the Rome Police Department.  Prior to getting into the car, he turned over a knife to Det. Race.

Upon arrival, [Lane] was brought to the booking area.  He was then taken to an interview room.  The door remained open and [Lane] was not handcuffed.

[Lane] began to talk to himself in the presence of Ptl. Ciccone, unprompted by any police questioning.  He said, "I don't know why the police want my shoes, I changed them.  I didn't murder anyone last night . . ." as well as several other remarks.  Shortly thereafter, Det. Race entered the room and [Lane] agreed to turn over his sneakers.  Det. Race then brought [Lane] into another interview room.

It was determined . . . from an interview with the victim[] that the quarter rolls matched the property taken from the crime scene. Furthermore, Det. Race observed the footprints at the scene matched [Lane's] sneaker.

Det. Race returned to the interview room to speak with [Lane] who had agreed to the interview. Prior to asking any questions, Det. Race orally advised [Lane] of his *Miranda* rights by reading them aloud from the Advice of Rights Form (Hearing Exhibit #1). [Lane] thereafter acknowledged that he understood his rights and agreed to speak with him. In addition, Det. Race reviewed the "Waiver of Rights" portion on the form which consisted of two questions. The detective read the two questions aloud and [Lane] answered them in the affirmative orally and then circled the word "yes" and placed his initials next to the questions, thereby agreeing to the interview without benefit of counsel. Both [Lane] and Det. Race signed the bottom of the document. [Lane] waived his rights at 3:51 p.m.

After receiving and waiving his rights, [Lane] spoke with Det. Race for approximately one hour and forty minutes. As Det. Race and [Lane] talked, the interview was being audio and video taped (Hearing Exhibit #2, disk of interview)[.] [Lane] declined to put anything in writing.

During his contact with [Lane], Det. Race detected the odor of an alcoholic beverage. In fact, he mentioned that in all of his previous contacts with [Lane], he determined that [Lane] had been drinking alcohol. Det. Race testified that he did not believe [Lane] to be intoxicated, that his answers to the questions asked were responsive and on point during the entire interview.

The hearing court then made the following conclusions of law:

On two separate occasions, [Lane] made voluntary statements not prompted by police questioning in the presence of Ptl. Ciccone and Det. Race. At the Rescue Mission, [Lane] expressed that he believed he was going to jail as he emptied the contents of his pockets and turned items over to his girlfriend. While sitting in an interview room at the Rome Police Department, [Lane] began to talk to himself and made several statements in the presence of Det. Race. It is clear that the statements made by [Lane] on both occasions were not the product of any "interrogation", i.e. either express questioning or "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response."

Where a statement is purely spontaneous and not the product of any interrogation, it is not necessary for *Miranda* warnings to be given to the defendant. The statements were made spontaneously and voluntarily by [Lane], and were not the product of words or actions by the police. Furthermore, a police officer need not "take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminatory statement within his hearing."

With respect to the preliminary statements made to Ptl. Ciccone and Det. Race while at the Rescue Mission, the Court finds that officers inquiries were investigatory in nature and that the answers given thereto were non-custodial responses.

[Lane] was not in custody when he made the statements. Furthermore, the statements were not the product of police interrogation. Thus, *Miranda* warnings were not required. [Lane] was not physically restrained and the questions asked by the patrolman and detective were investigatory rather than accusatory.

Prior to commencing the interview of [Lane] at the police station, Det. Race properly administered to him the rights as required by *Miranda v. Arizona*, 384 US 436. [Lane] freely, knowingly and voluntarily waived his rights, and consented to speak with the police without counsel. Both orally and in writing [Lane] waived his constitutional rights.

Even though [Lane] apparently had used alcohol, that use in no way interfered with his ability to understand his rights and to voluntarily waive those rights. "Self-induced intoxication does not ipso facto render a confession invalid." Clearly, "'[Lane] was not intoxicated to the degree of mania, or of being unable to understand the meaning of his statements.' In cases of confessions occurring while in a state of self-induced inebriation, a key issue is the trustworthiness of the statements. Here, there is no evidence from which it can be inferred that [Lane] had reached a level of intoxication which would render his statements untrustworthy."

This Court determines beyond a reasonable doubt that [Lane's] oral statements made to Ptl. Ciccone and Det. Race were not in any way or manner the product of any violation of his constitutional rights and shall be admissible at trial provided that the proper foundation is laid.

Lane then proceeded to jury trial on June 14, 2010. In his opening statement, defense counsel stressed that Lane could not have formed the requisite intent due to his excessive consumption of alcohol and marijuana on the night in question. At the conclusion of that opening statement, Lane asked the trial court if he could speak. After removing the jury from the courtroom and chastising him for his outburst, the trial court allowed Lane to address it. Lane told the court that he had not been provided competent counsel and complained about counsel's performance. The trial court disagreed, noting that counsel had consulted with Lane during jury selection, visited him in jail, spoke with him during the *Huntley* hearing, and appeared to be representing his best interests.

At trial, the prosecution presented testimony from 11 witnesses, including the victim, who was the aunt of Officer Kevin Beach, the Chief of Police of the Rome Police Department.

The prosecution also presented the results of DNA testing which revealed that, based on a buccal swab voluntarily provided by Lane, his semen was present on the victim's perianal area and in a tissue recovered from the liner of her wastebasket.  The evidence also showed that clothing found in Lane's apartment matched the description given by the victim, and items taken from the victim's apartment that night were found in his possession.

Lane was the sole witness to testify on his behalf.  According to Lane, he was walking by the victim's apartment at 4:00 a.m. when he saw her fall and wanted to help.  He entered the apartment through an open window, and the victim was "happy" to see him because she thought she had broken her arm.  Lane testified that the victim invited him to sit down, and they talked and laughed with each other.  He said that the victim told him that she was lonely and offered him money for sex.  He stated that she performed oral sex on him willingly.  Afterwards, Lane asked her about the money, and she told him it was in her pocketbook.  Lane came across a change purse and roll of quarters and took them.  The victim then told him to leave and stated that she did not want him to come back to her apartment again.  He left out the window and walked back to his apartment.  Lane further testified that the police later planted some of his personal items in the victim's apartment, and he believed that the police doctored the perianal swab so that it matched his DNA.

At the conclusion of trial, the jury found Lane guilty on all counts.  The trial court subsequently sentenced Lane as a second violent felony offender to consecutive determinate terms of imprisonment totaling 122 years in state prison: 15 years for the second-degree burglary; 25 years each for the 4 counts of first-degree criminal sexual act; and 7 year for the

first-degree sexual abuse charge.[2]  The court also imposed a 5-year term of post-release supervision.

In January 2011, Lane moved *pro se* to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10, arguing that: 1) trial counsel was ineffective for a variety of reasons; 2) the court improperly upheld the sufficiency of the grand jury minutes and declined to suppress Lane's videotaped police statement; 3) the jury was not impartial; and 4) the prosecution withheld exculpatory material.  The motion was denied on January 5, 2012, on the ground that Lane's appeal was pending and his claims should be properly considered on appeal. Lane sought leave to appeal the denial of his motion to vacate, which was summarily denied on April 23, 2012.

Through counsel, Lane then appealed his conviction to the Appellate Division, arguing that: 1) his statement to law enforcement should have been suppressed because Lane was intoxicated when he was administered *Miranda* warnings; 2) the evidence was legally insufficient to sustain the second-degree burglary conviction; 3) that conviction was against the weight of the evidence; 4) his trial counsel was ineffective for a variety of reasons; 5) the prosecutor engaged in misconduct; 6) he was deprived of a fair trial because the videotape presented to the jury showed that Lane had prior contact with the police and had been previously barred from the victim's apartment complex; and 7) his sentence was illegal and excessive.  On May 3, 2013, the Appellate Division issued a reasoned, published opinion affirmed that Lane's judgment in all respects.  *People v. Lane*, 966 N.Y.S.2d 307, 311 (N.Y. App. Div. 2013).  Lane

---

[2]        By operation of law, that sentence has been reduced to a total maximum of 50 years' imprisonment.  *See* N.Y. PENAL LAW § 70.30(1)(e)(vi).

sought leave to appeal to the New York Court of Appeals, raising the claims he had unsuccessfully raised before the Appellate Division. The Court of Appeals denied the leave application without comment on July 24, 2014. *People v. Lane*, 17 N.E.3d 508 (N.Y. 2014).

Lane timely filed a *pro se* Petition for a Writ of Habeas Corpus in this Court on October 14, 2014. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Lane raises the following 11 claims: 1) he was arrested without probable cause; 2) his confession should have been suppressed; 3) the police fabricated the case against him; 4) he was denied his right to a preliminary hearing; 5) the charging indictment was defective; 6) his conviction was based on false testimony; 7) trial and appellate counsel rendered ineffective assistance; 8) the prosecutor engaged in misconduct to secure the conviction; 9) the police, victim, defense counsel, prosecutor, and trial judge conspired to convict him based on false evidence; 10) the trial judge was biased against him; and 11) his sentence is harsh and excessive.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman*

interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.     Exhaustion

Respondent correctly contends that a number of Foster's claims are unexhausted and procedurally defaulted.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. §  2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim.  *Id.* at 365-66.  An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).  To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her

conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey*, 933 F.2d at 121.

Here, Lane did not raise in the state courts his claims that the police acted in bad faith by fabricating the case against him (Ground 3), that the prosecutor engaged in "abuse" in securing his conviction (Ground 8), and that the police, victim, defense counsel, prosecutor, and trial judge colluded to convict him based on false evidence (Ground 9). Likewise, he presented in state law terms only, without citation to federal case law or as violations of federal constitutional dimension, his claims that he was deprived of his right to a preliminary hearing (Ground 4) and that his conviction was based on false testimony (Ground 6). Moreover, he omitted from his leave application to the state's highest court his claim that his sentence was harsh and excessive (Ground 11). Accordingly, these claims are unexhausted.

Further, his unexhausted claims are procedurally barred. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991). Because Lane may not now return to state court to exhaust these

claims, the claims may be deemed exhausted but procedurally defaulted from habeas review.[3]

*See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

B.    Merits

In any event, even if Lane had fully exhausted his claims, he still would not be entitled to relief on them. For the reasons discussed below, the Court also denies relief on the merits of his unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). And as further discussed below, the Court additionally denies relief on the merits of the claims Lane exhausted in state court.

1.    Lack of probable cause (Ground 1)

Lane first argues that his conviction should be reversed because he was arrested without probable cause. But such claim is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[4]" federal habeas corpus relief will not lie for a

---

[3]    This Court has the discretion, but is not obligated, to stay these proceedings and hold the unexhausted claims in abeyance pending exhaustion in the state courts. *Day v. McDonough*, 547 U.S. 198, 209 (2006); *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). Even if Lane could establish the requisite good cause for failing to exhaust his claims, which does not appear from his filings, *Rhines* would still require that the Court deny his stay request because, as discussed *infra*, the claims are "plainly meritless." *Rhines*, 544 U.S. at 277. Likewise, a stay would be futile because, as discussed *supra*, a New York court would deny the claims as procedurally defaulted.

[4]    The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled. *See id.* at 70 & n.1. Lane has not asserted the existence of an unconscionable breakdown of that process, nor has he alleged any facts that would demonstrate such a breakdown in this case. Lane therefore cannot prevail on his challenge to the legality of his arrest.

---

U.S. CONST. amend. IV.

2.      Admissibility of confession (Ground 2)

Lane likewise contends that the trial court should have suppressed his inculpatory statements to law enforcement because they were not voluntarily made.  On direct appeal, he claimed that his statements were involuntary because they were made while he was in an intoxicated state.  The Appellate Division disagreed on direct appeal, reasoning that, "[c]ontrary to [Lane's] contention, the evidence introduced at the suppression hearing fails to establish that he 'was intoxicated to the degree of mania, or of being unable to understand the meaning of his statements.'"  *Lane*, 966 N.Y.S.2d at 309.

The Supreme Court has held that an individual subjected to custodial interrogation by law enforcement personnel "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  *Miranda*, 384 U.S. at 479.  A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Id.* at 444.  The safeguards ensured by *Miranda* do not apply at all times, however.  Spontaneous statements made by a defendant are not the product of an interrogation as defined by *Miranda*.  *United States v. Vigo*, 487 F.2d 295, 300 (2d Cir. 1973); *see also United States v. Colon*, 835 F.2d 27, 28 (2d Cir. 1987) (*Miranda* inapplicable where the inculpatory statement is spontaneous and did not result from interrogation or its functional equivalent).  Moreover, a person may validly waive his right to remain silent after receiving and understanding his *Miranda* rights.  *Berghuis v. Thompkins*, 560 U.S. 370, 385-86 (2010).  While the voluntariness of a confession

involves a mixed question of fact and law, the factual findings which underlie a determination of voluntariness are entitled to a presumption of correctness under AEDPA. *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). That presumption extends to a state court's factual determinations that were not explicitly stated but can nonetheless be inferred from the court's legal conclusion. *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997); *Smith v. Phillips*, 865 F. Supp. 2d 271, 279 (E.D.N.Y. 2012). A petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e). "Only if the material facts were not adequately developed by the state court, or the factual determination is not fairly supported by the record, may the district court set aside the presumption of correctness." *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 370 (E.D.N.Y. 2013).

In the instant Petition, Lane does not reassert his contention that his confession was rendered involuntary by his intoxication. Rather, he avers that he was subject to police coercion. According to Lane, the police lured him to the police station under the false pretense that he would be free to leave after providing a DNA sample and detained him for over 3 hours before advising him of his *Miranda* rights. However, the totality of the evidence presented during the *Huntley* hearing demonstrated ample support for the finding that Lane had not been coerced and that his statements to police were voluntary. There is no simply no indication in the record that his statements were in any way involuntary, and Lane provides no such support in his Petition before this Court. His bald assertions to the contrary are nothing more than an attack on the testimony of the police officers. Lane misperceives the role of a federal court in a federal habeas proceeding attacking a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. This Court's role is simply to determine

whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the

finding of fact.  *See Schlup*, 513 U.S. at 330.  In the absence of clear and convincing evidence to

the contrary, this Court is bound by the factual findings of the state court which concluded that

he offered his challenged statements, which were the subject of custodial interrogation, only

after being advised of his rights to remain silent and to have the assistance of an attorney and

subsequently waiving those rights.  28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.  His bare

assertions to the contrary do not constitute clear and convincing evidence sufficient to rebut the

presumption of correctness that this Court must afford the state court's finding that Lane's

statements were voluntarily made.  Lane is therefore not entitled to relief on this claim.

      3.      Sufficiency of the evidence (Grounds 3, 6, and 9)

Lane additionally presents 3 claims the thrust of which challenge the sufficiency of the

evidence against him.  In Ground 3, Lane argues that the police witnesses lied during the

investigation and at trial, planted evidence, and prompted the victim to lie out of loyalty to their

boss, Chief Beach, who was the victim's nephew.  He similarly argues in Ground 6 that he was

framed for helping and foolishly engaging in consensual sexual activity with a spiteful and

politically connected woman.  Lane further argues in Ground 9 that the prosecutor, trial judge,

defense counsel, and police colluded to convict him based on false evidence and inconsistent

testimony.

But again, Lane misperceives the role of a federal court in a habeas proceeding

challenging a state-court conviction.  As articulated by the Supreme Court in *Jackson*, the

constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Lane argues that there was insufficient proof that he committed the crime primarily by attacking the credibility and raising the motive to lie of the prosecution witnesses and by alleging a lack of corroboration. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Lane testified at trial and presented to the jury his story of that evening's events. Although it might have been possible to draw a different inference from the evidence had the jury found Lane rather than the victim credible, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Lane bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record here, which, as described above, contained overwhelming evidence against Lane, does not compel the conclusion that no rational trier of fact could have found proof that Lane had committed the crimes, especially considering the double deference owed under *Jackson* and the AEDPA. Lane therefore cannot prevail on any of these insufficiency of the evidence claims.

4.      Entitlement to preliminary hearing (Ground 4)

Lane next argues that he was deprived of his right to a preliminary hearing.  In New York state courts, a preliminary hearing is held to determine whether there is reasonable cause to believe that a defendant has committed a felony and should be held for grand jury action.  *See* N.Y. CRIM. PROC. L. § 180.70(1).  However, there is "no federal constitutional right to a preliminary hearing."  *Strong v. Mance*, No. 07-CV-0878, 2010 WL 2010 WL 1633398, at *7 (N.D.N.Y. Apr. 2, 2010) (collecting cases).  Thus, even assuming, *arguendo*, that Lane was denied a preliminary hearing, his claim is not cognizable on federal habeas review.

5.      Defective indictment (Ground 5)

Lane likewise asserts that his conviction should be reversed because the indictment against him "is defective due to misrepresentation and fraudulent conduct on the part of the prosecutor, which impaired the integrity of the grand jury proceedings as a whole."  But even assuming, without deciding, that his indictment was secured by improper statements and misrepresentation that was later followed by defective grand jury proceedings, Lane's subsequent conviction forecloses any potential relief here.  For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt.  *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted.  Therefore, the convictions must stand despite the [grand jury] rule violation.").  In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on

direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)). Lane is therefore not entitled to relief on his claim that the indictment was defective due to fraud and misrepresentation.

To the extent Lane reasserts his claim made on direct appeal that the indictment was additionally defective for containing duplicitous counts, he cannot prevail on that claim either. As an initial matter, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding this claim unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York CPL § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As Lane never objected before the trial court to the charges in the indictment, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and the claim is denied on that basis.

Moreover, Lane's contention is also without merit. New York CPL § 200.30(1) provides that "[e]ach count of an indictment may charge one offense only." "Hence, where a crime is made out by the commission of one act that act must be the only alleged offense alleged in the

count.  Put differently, acts which separately and individually make out distinct crimes must be charged in separate and distinct counts." *People v. Keindl*, 502 N.E.2d 577, 580 (N.Y. 1986).

Initially, it should be noted that the Supreme Court has never held that an indictment containing duplicitous counts violates the Due Process Clause.  *See Jones v. Lee*, No. 10 CIV. 7915, 2013 WL 3514436, at *7 (S.D.N.Y. July 12, 2013) (finding that "there is no constitutional right against duplicity per se").  The Second Circuit has further indicated that duplicitous pleadings are not even presumptively invalid in and of themselves.  *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir.2006) (citing *United States v. Sturdivant*, 244 F.3d 71, 75 n. 3 (2d Cir.2001)).  Thus, the mere presence of duplicitous charges cannot provide a basis for habeas relief.  That said, the strictures against duplicitous counts in an indictment are intended to avoid potential forms of prejudice that could rise to a constitutional violation.  Specifically, these strictures are concerned with avoiding:

> the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution.

*United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981); *see also Olmeda*, 461 F.3d at 281. Impermissible duplicity therefore occurs where multiple distinct crimes are combined into one count of an indictment and where that combination actually prejudices the defendant with regard to those concerns.  *Sturdivant*, 244 F.3d at 75.  As the Second Circuit has written, "[i]f the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations" underlying the doctrine.  *United States v. Murray*, 618 F.2d 892, 897 (1980).

Lane cannot show prejudice, however, because he cannot even show that the indictment contained duplicitous counts. Rather, as the Appellate Division found, "'[e]ach count of [the] indictment . . . charge[s] one offense only' (CPL 200.30[1])," and "[t]he victim's testimony and the court's charge establish that different conduct is alleged in each of the various counts and that the incident was not a single uninterrupted crime." *Lane*, 966 N.Y.S.2d at 311 (citations omitted). Accordingly, Lane is not entitled to relief on this claim.

      6.       Ineffective assistance of counsel (Ground 7)

Lane also avers that trial and appellate counsel rendered ineffective assistance. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668 , 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Lane must show that his counsel's representation were not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at

697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Because one of the main functions of appellate counsel is to "winnow[ ] out weaker arguments on appeal," *Jones v. Barnes*, 463 U.S. 745, 751 (1983), counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction, *see Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citation omitted); *accord Barnes*, 463 U.S. at 754. To state a claim of ineffective assistance of appellate counsel, a petitioner must show (1) "that his counsel was objectively unreasonable in failing to find arguable issues to appeal" and (2) "a reasonable probability that, but for his counsel's unreasonable failure to" raise an issue on appeal "he would have prevailed on his appeal." *Smith*, 528 U.S. at 285 (citations omitted). "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (citation and internal quotation marks and brackets omitted).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable

probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Lane's ineffective assistance claims must fail, however, even under the more favorable New York standard. In his Petition, Lane declines to specify counsel's alleged errors "[i]n the interest of brevity," and cites instead to trial counsel's general "failure to elicit crucial evidence" and "failure to challenge the weaknesses in the prosecution's case" and alleges that appellate

counsel "raised significantly weaker issues."  But these claims are simply too vague and conclusory to state a proper ground for habeas relief under either *Strickland* prong, and therefore must be dismissed as meritless.  *See, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either *Strickland* prong" (citation omitted)).  Moreover, to the extent that Lane's ineffective assistance claim is based on any of the claims he brings forth in the instant Petition, as discussed throughout this Memorandum Decision, the Court finds no merit to those claims, and they therefore cannot be the underlying basis of a valid ineffective assistance claim.  *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir.2001) (failing to raise meritless claims does not constitute ineffective assistance).  Consequently, Lane cannot prevail on his ineffective assistance of counsel claim.

7.      Prosecutorial misconduct (Ground 8)

Lane similarly argues that the prosecutor engaged in various types of misconduct, providing a laundry list of complaints without factual support.  For the same reasons discussed above, Lane is not entitled to habeas relief for claims that he expresses solely in conclusory terms.  *See, e.g.*, *Maddox v. Lord*, 818 F.2d 1058, 1061 (2d Cir. 1987) (court can deny habeas petition when claims are "merely 'vague, conclusory, or palpably incredible'"); *United States v. Romano*, 516 F.2d 768, 771 (2d Cir. 1975) (habeas relief properly denied where prosecutorial misconduct claim consisted of only "conclusory allegations").

Nor is he entitled to relief due to the prosecutor's statements in summation that Lane's "testimony was tailored to the evidence" and that Lane was a "street rat."[5]  It is improper as a matter of both state and federal law for a prosecutor to impugn defense counsel's integrity, denigrate or ridicule the defense theory, or make *ad hominem* attacks on defense counsel.  *See, e.g.*, *United States v. Biasucci*, 786 F.2d 504, 513-14 & n.9 (2d Cir. 1986) (characterizing as "clearly . . . inappropriate" the prosecutor's "needless and unwarranted *ad hominem* attacks against defense counsel[,] . . . [f]or instance, the prosecutor addressed defense counsel at one point as 'you sleaze,' at another as 'you hypocritical son-,' as being 'so unlearned in the law,' and on several occasions the prosecutor objected to questions by the defense as 'nonsense'" (internal citations to the record omitted));  *People v. LaPorte*, 762 N.Y.S.2d 55, 57-58 (N.Y. App. Div. 2003) (reversing conviction where prosecutor's remarks during summation were not fair response to defense counsel's summation and thus denied defendant a fair trial because evidence against defendant was not overwhelming, prosecutor impugned defense counsel's integrity, ridiculed the defense theory as "mumbo jumbo," and "warned the jurors . . . several times that defense counsel was manipulating them and trying to prevent them from using their common sense") (citation omitted).  But as the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation."  *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (citation and internal brackets omitted).  Here, the denigrating comments may be viewed as proper inferences from the evidence presented at

---

[5]     Based on this Court's independent review of the trial transcript, it appears that Lane is referring to the prosecutor's statement that, "as if he hadn't violated her enough, [Lane] proceeds to forage through her home like a street rat forages through garbage looking for something to eat."

trial and constituted a fair response to defense counsel's summation, in which he challenged the veracity of the prosecution's witnesses and the strength of its case. *See Knight v. Walsh*, 524 F. Supp. 2d 255, 287 (W.D.N.Y. 2007). In short, after an independent review of the prosecutor's summation, the Court concludes that none of the prosecutor's statements during summation rises to the level of egregious conduct required for habeas relief.

        8.        Judicial bias (Ground 10)

Lane further asserts that the trial judge was biased against him. In order to prevail on a claim of judicial bias, a petitioner must show that he was denied a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964). A state court judge is required to recuse himself for bias only if he has demonstrated "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *McMahon v. Hodges*, 382 F.3d 284, 290 (2d Cir. 2004) (holding that judge's statement that defendant would likely be convicted given evidence at co-defendant's trial did not require recusal); *see also LoCascio v. United States*, 473 F.3d 493, 496-97 (2d Cir. 2007) (recusal properly denied where rulings did not evidence deep-seated antagonism).

Here, Lane supports his judicial bias argument by citing the court's denial of his pre-trial suppression motions, his motion to dismiss the indictment, his motion for new counsel, and his motion to vacate the conviction. But the Supreme Court has explained that adverse judicial rulings, standing alone, are not probative of judicial bias. *Liteky*, 510 U.S. at 555. Lane's claims that the trial judge was biased as evidenced by his adverse rulings thus fails to set forth a violation of the due process clause. *Id.* at 556 ("All of these grounds are inadequate under the

principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."). Lane fails to demonstrate that any of the challenged decisions were motivated by animus or bias and thus cannot establish that they deprived him of due process.

9.     Excessive sentence (Ground 11)

Finally, Lane argues that the sentence imposed was excessive. It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Here, Lane does not dispute that his sentence fell within the state's statutory guidelines, and thus his harsh and excessive sentence claim is not cognizable on federal habeas review.

And to the extent that Lane's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and

"extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'" *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)). Here, the sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment).

Likewise, to the extent that his citation to the rejected plea offer could be construed as a claim that his sentence was imposed in retaliation for his rejection of the plea, such claim is also without merit. The Supreme Court has determined that due process is violated when a penalty is imposed upon a person for electing to exercise a constitutionally protected right, including the right to have a jury trial in a criminal case. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). "However, the mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations, does not indicate that a petitioner has been punished for

exercising his right to proceed to trial." *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) (citation omitted); *see also Naranjo v. Filion*, No. 02 Civ. 5449, 2003 WL 1900867, at *9-10 (S.D.N.Y. Apr. 16, 2003) (rejecting petitioner's argument that the disparity between the prosecution's pretrial plea offer of 5-10 years and his subsequent sentence of 25-50 years suggested vindictiveness).  Here, while Lane ultimately received a maximum sentence capped at 50 years' imprisonment which is much longer than the 17-year plea offer he rejected,[6] there is no evidence in the record to suggest that vindictiveness or any other improper criterion influenced the trial court when imposing Lane's sentence.  Lane thus cannot prevail on his sentencing claim in any event.

## V. CONCLUSION

Lane is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El,*

---

[6]     The record is also clear that, when rejecting the 17-year plea offer, Lane affirmatively acknowledged that he faced a maximum exposure of "over a hundred years." There is no indication in the record that his rejection of the plea was involuntary or unknowing.

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: January 12, 2016.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
Senior United States District Judge
